IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTENA DENIS BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Act. No.: 1:20-cv-131-ECM |
| | ) (wo) |
| DONALD VALENZA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the Court on a Motion to Dismiss Plaintiff's Second Amended Complaint (doc. 39), filed by the Defendants, Donald Valenza ("Valenza"), James Brazier ("Brazier"), Houston County, Alabama ("Houston County"), and Neil Pollen ("Pollen").

The Plaintiff, Christena Denis Bell ("Bell"), has filed a complaint and two amended complaints in this case. (Doc. 1, 23 & 38). The second amended complaint was filed after the Court granted a motion for more definite statement. (Doc. 37). The claims in the second amended complaint are for deliberate indifference to serious medical needs brought against Houston County, Valenza, and Brazier (count I), deliberate indifference to health/safety brought against Houston County, Valenza, and Brazier (count II), unlawful search and seizure brought against Pollen (count III), excessive force brought against Pollen (count IV), violation of the Americans with Disabilities Act (ADA) brought against Houston County, Valenza, and Brazier (count V), supervisor liability brought against Valenza and

Brazier (count VI), and inadequate training/municipal liability brought against Valenza and Brazier (count VII).

For reasons to be discussed, the motion to dismiss is due to be GRANTED in part and DENIED in part.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III.   FACTS

The second amended complaint alleges that Bell was arrested for possession of a controlled substance and possession of drug paraphernalia on February 24, 2018, and taken to the Houston County jail. Valenza was the Houston County Sheriff who was responsible for supervision of the Houston County Jail, along with Brazier, the jail Commander.

After Bell was booked into the jail, Pollen, a booking officer, withheld Bell's food tray until she showed him her breasts, which he proceeded to grab. (Doc. 38 para. 19-21). On February 26, Pollen told Bell that female inmates would flash him or do other sexual things when he looked into their cells, but he did not complain about it. (*Id.* para. 26). The second amended complaint alleges that on February 27, Pollen came into Bell's cell with her, ran his hand down the front of her jumpsuit and assaulted her. (*Id.* para. 29).

On February 28, 2019, Bell's request for anxiety and sleeping medication was denied by Valenza and Brazier. (*Id.* para. 30).

On that same day, February 28, Bell was taken to the Dothan city police department to talk to an investigator about another case and, while there, Bell complained about Pollen's actions at the Houston County jail. (*Id.* para. 32). Bell was asked to "wear a wire" as part of an investigation of Pollen (*Id.*). Upon Bell's return to the jail, Pollen acted inappropriately, and investigators rushed in and removed him. (*Id.* para. 33). Bell was informed that Pollen would be placed on administrative leave. (*Id.*). Bell never saw the investigators again and was never taken to another jail, which caused her anxiety. (*Id.*). Bell alleges that Valenza and Brazier knew or should have known that nationally female inmates are subject to sexual harassment and abuse. (*Id.* para. 46). Bell also alleges that

3

she "reported sexual harassment and abuse by Pollen after the Plaintiff informed jail officials of Pollen's actions violating her constitutional rights to be free from such abuse and harassment . . ." but Valenza and Brazier "failed to take reasonable steps to remedy the wrong . . . ." (*Id.* para. 63).

The second amended complaint also alleges that Houston County inadequately funded the Houston County Sheriff, resulting in a failure to provide psychological care and treatment, (*id.* para. 37), and that Houston County cut funding to the Sheriff and the jail and re-allocated funds elsewhere. (*Id.* para. 44).

## IV.   DISCUSSION

Before the Court can address the merits of the Defendants' motion to dismiss, the Court must determine the scope of that motion. The Defendants request that the Court dismiss the entire second amended complaint, but the Defendants do not address in any way counts III and IV, which are the claims against Pollen for unreasonable search and seizure and excessive force. Furthermore, in invoking the defense of qualified immunity in their motion to dismiss, the Defendants specifically assert that "Sheriff Valenza and Commander Brazier are entitled to qualified immunity on the Plaintiff's claims," but do not refer to Pollen. (Doc. 40 at 9). The only reference to Pollen in the brief in support of the motion to dismiss is in a footnote which notes that for purposes of the argument that Bell failed to follow the *Federal Rules of Civil Procedure* and this Court's Order, "Defendants" refers to Pollen, Valenza, Brazier and Houston County. (Doc. 40 at 12, n.5). The Court concludes, therefore, that the Defendants have neither invoked qualified immunity as to Pollen, nor met their burden in moving to dismiss for failure to state a claim

4

as to counts III and IV which are asserted against Pollen, and that the claims in counts III and IV are due to proceed.

    A.  Claims Against Valenza and Brazier in Counts I and II

The Defendants address together the claims asserted in counts I and II, arguing that Bell has failed to plead facts to show that the Defendants personally participated in any alleged constitutional violation.[1] The Defendants also have invoked the defense of qualified immunity.[2]

Bell has alleged that she was sexually harassed and assaulted by Pollen while she was a pre-trial detainee. Bell's claims against Valenza and Brazier in counts I and II are attempts to hold them liable for their own deliberate indifference to her safety and to her medical needs. The Court will address each of these in turn, but begins with the deliberate indifference to safety claim in count II.

    1.  *Deliberate Indifference to Safety*

The Eleventh Circuit has given guidance to district courts on how to evaluate a claim of deliberate indifference to safety by a pretrial detainee in the context of a motion to dismiss for failure to state a claim. *See Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013). In *Franklin*, a pretrial detainee alleged that she had been sexually assaulted by a jail guard, she complained about the assault, an investigation was made, and that the same guard had

---

[1] Bell refers to the Eighth and the Fourteenth Amendments in her complaint. Because the complaint alleges that she was a pretrial detainee, the Eighth Amendment claims are due to be dismissed with prejudice. *See Hammonds v. DeKalb Cty., AL*, 2017 WL 363974, at *5 (N.D. Ala. 2017).
[2] Qualified immunity protects government officials from suit if they are "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

assaulted other jail detainees previously. *Id.* at 1248. In reversing the district court's denial of a motion to dismiss, the court instructed that the district court first should have identified the precise constitutional violation alleged–deliberate indifference–and then should have applied the correct standard–a subjective knowledge of a substantial risk of harm, disregard of that risk, and conduct that is more than gross negligence. *Id.* at 1250. Then, the court explained, the district court should have disregarded conclusory allegations in the complaint and examined the well-pleaded facts. *Id.* at 1251. Applying this framework, the court found insufficient allegations of fact to support a claim of deliberate indifference because the plaintiff alleged that shortly after she reported the assault, an investigation commenced. *Id.* at 1252.

In this case, Bell has advanced two theories for her deliberate indifference to safety claim: one, that Pollen engaged in widespread abuse so that Valenza and Brazier knew of Pollen's actions, but no action was taken; and two, that Bell complained about Pollen's sexual harassment and assault to jail officials, but no action was taken. The motion to dismiss only has addressed the first theory. The Defendants have argued that Bell has failed to provide factual allegations of Valenza and Brazier's knowledge of any widespread abuse and instead has relied improperly on conclusory allegations. They argue that Bell's general allegations are not the type of facts of widespread abuse that can establish liability.

The Court agrees that Bell's allegations are not sufficient to plead widespread abuse. In her brief, she points to an allegation that "Pollen then told the Plaintiff stories about how many female inmates will 'flash' him or 'start doing sexual stuff' when he looks into their cells to check in on them and doesn't complain . . ." (Doc. 38 para. 26). In her brief, Bell

characterizes Pollen as "bragging." (Doc. 44 at 16). Bell does not, however, allege that any abuse by Pollen actually occurred. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant[,] and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir.2007). Without an allegation that the conduct actually occurred, or any facts of subjective knowledge of conduct on the part of Valenza and Brazier, Bell has failed to allege knowledge of a substantial risk of harm on the part of Valenza and Brazier. *See Franklin*, 738 F.3d at 1250. Additionally, Bell's references to a nationwide recognition of dangers posed to women inmates amount to "conclusory allegations about . . . 'knowledge and/or access to knowledge' about the danger potentially posed," and do not state a claim for deliberate indifference. *See Gross v. White*, 340 F. App'x 527, 532 (11th Cir. 2009).

As noted, however, Bell has alleged a separate basis for her claims of deliberate indifference against Valenza and Brazier; namely, that Valenza and Brazier knew of a substantial risk of harm because Bell "informed jail officials of Pollen's actions violating her constitutional rights to be free from such abuse and harassment," but they failed to take reasonable steps to "remedy the wrong." (Doc. 38 para. 63). Bell also alleges facts regarding the context of her complaint, alleging that she also requested medication, and that Valenza and Brazier denied her request for medical treatment after she "complained of being victimized and abused by Pollen." (*Id.* para. 59).

Bell's allegations of her complaint to jail officials have not been addressed by the Defendants in their briefs, presumably because Bell's allegations regarding her complaint to jail officials are located throughout the second amended complaint and not necessarily

7

within count II itself.  This Court, however, must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  Because Bell has alleged facts that she complained about Pollen's abuse and harassment to jail officials around the time that she requested medication, and that Valenza and Brazier responded to her request for medication, a reasonable inference can be drawn of subjective knowledge by Valenza and Brazier of her complaint of sexual harassment and abuse.  Further, Bell has alleged that her ultimate complaint to the Dothan police was credible enough to prompt action by that department.  Finally, she has alleged facts which distinguish this case from *Franklin* because her complaint to jail officials was not responded to in any way.  Therefore, the Court concludes that Bell has alleged sufficient facts to state a plausible claim of deliberate indifference. *See Franklin,* 738 F.3d at 1250; *see also Bridges v. Poe*, 487 F. Supp. 3d 1250, 1258 (N.D. Ala. 2020) (finding where plaintiff alleged that defendant observed conduct and was warned by two different sources that jailers were forcing inmates to have sex with them, but failed to install more cameras or discipline guards, and allegations of a permissive policy of conduct, the conduct amounted to more than gross negligence).

The Court further concludes that the law was clearly established that deliberate indifference to a report of sexual harassment and abuse can subject an individual to liability, so that Valenza and Brazier are not entitled to qualified immunity at this point in the proceedings. *See LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993); *see also Brown v. Smith*, 2006 WL 1890192, at *8 (M.D. Ga. 2006)(finding that the law was clearly established in *LaMarca* that a prison supervisor's failure to respond to numerous reports

8

signaling an atmosphere within the prison that subjected inmates to the continuous threat of violence, including sexual assault by jailers, was unlawful, and could subject him to supervisory liability). The Defendants, of course, are able to again raise the defense of qualified immunity in a properly filed motion for summary judgment upon factual development.

### 2. *Deliberate Indifference to Medical Needs Claim*

In addition to the claim of deliberate indifference for failure to address sexual abuse by a jailer, Bell also has alleged that Valenza and Brazier were deliberately indifferent to her medical needs. "[A]n official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Bell has alleged that she was booked into the jail on February 24, 2018, and that her "request for anxiety and sleeping medication was denied by Valenza and Brazier" four days later, on February 28, 2018. (Doc. 38 para. 30). The deliberate indifference to medical needs claim alleges that Bell's medical records reflect bi-polar disease, schizophrenia, and anxiety, so those records put Valenza and Brazier on notice that Bell would have aggravated anxiety and emotional distress due to abusive contact by Pollen, but Valenza and Brazier denied her request for medication after her complaint of harassment. (*Id.* para. 39).

Upon review of the second amended complaint, this Court must conclude that the medical needs claim, unlike the safety claim, is not sufficiently supported by allegations of fact. In addition to facts allowing for the inference that Valenza and Brazier knew of Bell's

9

request for medication, which are present, the medical needs claim requires facts which allow for a reasonable inference of knowledge that the harassment and abuse created a serious medical need. That is, Bell's theory requires facts that Valenza and Brazier as laypersons could interpret her medical records and know that because of Bell's medical conditions, sexual harassment would require the mental health treatment she requested. *See Hill v. Dekalb County Regional Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (explaining that a serious medical need sufficient is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention")(quotation and citation omitted), *overruled on other grounds, Hope v. Pelter*, 536 U.S. 730 (2002). While she argues in her brief that she needed medication because of Pollen's actions, there is no allegation in the amended complaint that that link was known to Valenza and Brazier. Therefore, Valenza and Brazier are entitled to qualified immunity on this claim and the motion to dismiss is due to be GRANTED as to the claim against Valenza and Brazier in count I.

B. Claims against Valenza and Brazier in Counts VI, VII

The claims in count VI and VII are for supervisor liability and for inadequate training, respectively. These counts are the theories pursuant to which Bell attempts to establish liability of Valenza and Brazier for Pollen's unreasonable searches and excessive force, as alleged in counts III and IV.

*Respondeat superior* or vicarious liability theories are unavailing for constitutional claims. *See Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994). However, Bell has alleged a basis for liability grounded not in those concepts, but in deliberate

indifference; namely, that she complained to jail officials that Pollen had sexually harassed and abused her, and no action was taken. (Doc. 38 para. 63). Accordingly, for the same reasons that the motion to dismiss is due to be denied as to the claim against Valenza and Brazier in count II, the supervisor liability claim in count VI also is not due to be dismissed. *See West*, 496 F.3d at 1328 (explaining that to hold a supervisor defendant liable for a constitutional violation a plaintiff must show deliberate indifference to constitutional rights or facts that support an inference that the supervisor knew the subordinate would act unlawfully and failed to stop him from doing so). In addition, the Defendants are not entitled to qualified immunity on this claim at this time. *See Danley v. Allen*, 540 F.3d 1298, 1315 (11th Cir. 2008)(explaining that it has been long-recognized that supervisors are liable for excessive force where the supervisors received reports of misconduct and did nothing to remedy the situation), *overruled in part on other grounds by, Randall*, 610 F.3d at 705.

The claim in count VII is for inadequate training and poses a separate issue because it is based not on a response to a complaint about Pollen's conduct, but on a purported widespread pattern of abuse by Pollen. The claim alleges that Valenza and Brazier should have trained Pollen before he assaulted Bell, based on Pollen's previous interactions with female detainees; however, as discussed above, there are insufficient factual allegations to support a theory of previous widespread abuse by Pollen known to Valenza and Brazier. *See West*, 496 F.3d at 1329. Therefore, Valenza and Brazier are entitled to qualified immunity on this claim and the motion to dismiss is due to be GRANTED as to count VII.

C. Claims against Houston County in Counts I, II

The only basis for dismissal of the claims brought in counts I and II against Houston County which has been pointed to by the Defendants is contained in a footnote in their brief. (Doc. 40 at 5, n.2). The Defendants point out in that footnote that counties in Alabama cannot be held liable for the actions of sheriffs and their employees because sheriffs are state constitutional officers, not county employees. (*Id.*). In their reply, the Defendants again state that Bell fails to acknowledge that Houston County cannot be held liable for the alleged wrongdoing of a sheriff or sheriff's employee. (Doc. 45 at 3).

This Court certainly agrees that, as a matter of state law, Houston County has no authority over a sheriff or sheriff's personnel in matters related to the operation of a jail, and any claim asserted on that basis is due to be dismissed. *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1289 (11th Cir.1998). Any claims based on *respondeat superior* against Houston County in counts I and II are due to be dismissed. Bell, however, has pleaded a different theory of Houston County's liability in counts I and II: liability arising from a failure to adequately fund the jail. *See, e.g., Gaines v. Choctaw Cty. Comm'n*, 242 F. Supp. 2d 1153, 1162–63 (S.D. Ala. 2003) (deliberate indifference to serious medical needs arising from failure to fund medical care states a claim under § 1983). Specifically, Bell alleges that Houston County had a state-mandated duty to provide for the bare minimum standard of psychological treatment for inmates, but breached that duty when it decided to inadequately fund the Sheriff's Department as a cost cutting measure, so that

additional funds that might otherwise have been used to provide better medical care for inmates could be used elsewhere by Houston County. (Doc. 38 at para. ¶38, 58).

As noted above, the Defendants only moved to dismiss *respondeat superior* claims against Houston County. It ultimately may be that Bell is unable to present sufficient evidence to support a claim against Houston County based on a failure to fund. *Cf. Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003) (holding that plaintiff failed to present sufficient evidence to establish that the County's failure to fund a second, nighttime jailer was deliberately indifferent to a "'strong likelihood, rather than a mere possibility,' that suicide would result from [the County's] actions or inaction."). At this point, however, because the Defendants have only moved to dismiss a *respondeat superior* theory against the County, and that is not the only theory of liability pleaded, the motion to dismiss is due to be DENIED as to the Fourteenth Amendment claims against Houston County based on lack of funding in counts I and II.

### D.  ADA claim against Houston County, Valenza, and Brazier in Count V

The Defendants argue that Bell has failed to plead sufficient facts to state a claim under the ADA against Houston County (doc. 40 at 7), but Bell ignores that argument in her brief and contends, incorrectly, that the Defendants have only moved to dismiss an ADA claim against Valenza and Brazier. (Doc. 44 at 12--13).

First, as to any ADA claim against individuals, the claim is due to be dismissed. *See Best v. Huffman*, 2018 WL 7585562, at *16 (S.D. Ala. 2018), *report and recommendation adopted*, 2019 WL 1173353 (S.D. Ala. 2019).

Second, although the claim against Houston County is unclear, under any reading of it in the second amended complaint, it is also due to be dismissed.  An ADA claim can be brought if a pretrial detainee is treated differently because of a disability or is unable to access a benefit or service because of a disability, but a reasonable accommodation could ensure access to that benefit or service. *See Arenas v. Georgia Dep't of Corr.*, 2018 WL 988099, at *8 (S.D. Ga. 2018).  However, the claim as pleaded in this case is that Bell requested but was denied mental health treatment and medication (doc. 38 para. 59), specifically, anxiety and sleep medication (doc. 38 para. 30).  In explaining the claim in her brief, Bell uses the term "intentionally discriminated" (doc. 44 at 13), but she also refers to a reasonable accommodation (*id.* at 15).

A "claim under the ADA . . . cannot be based on an allegation that Defendants . . . provided inadequate treatment," *Arenas*, 2018 WL 988099, at *8, or failed "to provide medical care to disabled prisoners or detainees." *Hammonds v. DeKalb Cty., AL*, 2017 WL 363974, at *6 (N.D. Ala.), *on reconsideration in part*, 2017 WL 1407461 (N.D. Ala. 2017); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) for the proposition that the ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners).  Although Bell was ordered to provide a more definite statement of her claims, she has not alleged facts to support a claim of disability discrimination or facts that she requested and was denied an accommodation.  This Court concludes, therefore, that the claim that she "was provided with inadequate medical care when [s]he was not treated for h[er] mental illnesses is the exact type of claim that is impermissible under the ADA . . . ."

14

*Arenas*, 2018 WL 988099, at *8.  The motion to dismiss is due to be GRANTED as to the ADA claim.  *See Best*, 2018 WL 7585562, at *16 (dismissing an ADA claim and stating that "a claim for negligent or inadequate medical treatment is not actionable pursuant to the ADA.").

## V.  CONCLUSION

For the reasons discussed, it is ORDERED that the motion to dismiss (doc. 39) is GRANTED in part and DENIED in part as follows:

1. As to Defendants Valenza and Brazier, the Motion to Dismiss is GRANTED as to the claim in count I, the Eighth Amendment claim in count II, the claims in count V, and the claims in count VII.

2. As to Defendant Houston County, the Motion to Dismiss is GRANTED as to any *respondeat superior* claim in counts I and II and the claim in count V.

3. The Motion to Dismiss is DENIED as to, and the case will proceed on, the Fourteenth Amendment claims based on lack of funding in counts I and II against Houston County; the Fourteenth Amendment claims in count II against Valenza and Brazier; the claims against Pollen in count III and IV; and the claims in count VI against Valenza and Brazier.

DONE this 10th day of  September, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE